UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **HENRY RUHWIEDEL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:12CV60-PPS |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Sylvia Kurcz-Ruhwiedel filed an application for disability insurance benefits under Title II of the Social Security Act. An Administrative Law Judge denied Ruhwiedel's application based on his finding that she was not under a disability within the meaning of the Social Security Act from January 5, 1995 (the date on which she claims her disability began) through the date she was last insured. Ruhwiedel appealed that decision but has since passed so her husband Henry Ruhwiedel has been substituted as the proper party-plaintiff.[1] [DE 24]

Because Ruhwiedel's request for review by the Appeals Council was denied, the ALJ's decision serves as the final determination of the Commissioner. Although the ALJ found that Sylvia suffered from severe impairments, he found that they did not meet or medically equal one of the listed impairments in the Social Security regulations so as to conclusively establish disability. [DE 11, p.21]. The ALJ went on to find that through the date Sylvia was last insured, she retained the residual functional capacity to perform sedentary work, including her past relevant work as a human resources manager. [DE 11, pp. 21-24]. This decision must be

---

[1] What was apparently a misspelling of the couple's surname has also been corrected, from "Ruhweidel" to "Ruhwiedel."

affirmed if "supported by substantial evidence." 42 U.S.C. §405(g). *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Ruhwiedel now offers a number of challenges to the Commissioner's adverse determination. At least one challenge requires me to remand this case for further proceedings.

**The Administrative Record**

Sylvia filed her application for benefits in August 2009, claiming that she had been disabled beginning January 5, 1995, when she suffered a heart attack. [DE 11, p. 18]. Sylvia testified at the hearing that she had not worked since the fourth quarter of 1993. [DE 11, p. 37]. She identified her medical complaints as involving weakness (in terms of both stamina and upper body strength), shortness of breath, and heart palpitations (later addressed by heart surgery in May 2004). [DE 11, p.44]. Sylvia acknowledged that she had been able to bathe and dress herself, to drive as needed several times a week to medical and rehabilitation appointments, to do light housework, to shop with her husband with the use of a "cart", and to engage in her hobby of painting. [DE 11, p.48-50].

Sylvia testified that she was capable of sitting for up to an hour (and then needing to stretch), standing for 5 to 10 minutes, only "very limited" walking, and lifting less than 5 pounds. [DE 11, p. 51]. Because Sylvia couldn't walk "any great distance," she used a walker from time to time, and in a store or mall would use an electric cart if one was available. [DE 11, p.53]. It is unclear why it took her 14 years to file her disability claim. All that she said at the hearing was that she was unaware of the possibility of social security disability and was therefore simply uninformed. [DE 11, pp.54-55].

Sylvia claimed to have seen her cardiologist, Dr. Beiser, every few months in 1995 following her heart attack, and then every 3 to 6 months thereafter as her primary treating physician, apparently until he moved his practice at some later time. [DE 11, p.40]. The opinion of Sylvia's subsequent treating cardiologist, Dr. Brigham, is not at all helpful to demonstrate that Sylvia was disabled as of 1999, because Brigham started treating Sylvia in 2005, and his 2007 opinion was based on her "current medical condition." [DE 11, p.109].

In an effort to shore up her evidence of disability, Sylvia consulted her previous cardiologist, Dr. Beiser, on December 1, 2009 in connection with her appeal of the denial of benefits. Thereafter Dr. Beiser provided Sylvia a letter describing her cardiac condition and treatment history, beginning with her heart attack in January 1995 through the later major heart surgery in 2004. [DE 11, pp.243, 345-347]. Dr. Beiser expressed his opinion "that this patient has been completely and totally disabled and unable to perform any meaningful work since 1995 and is an excellent candidate for social security disability." *Id*.

Sylvia also testified to treatment between 1995 and 1999 by an internist, Dr. Adams-Miller, for such issues as arthritis and migraine headaches. [DE 11, pp.41-42]. No records are available from Dr. Adams-Miller, whom Sylvia indicated has since stopped practicing medicine. *Id.*

**The ALJ's Rejection of the Treating Physician's Opinion**

The parties agree on the principle that in order to be eligible for disability benefits, Sylvia was required to establish that she was disabled prior to the date she was last insured (as defined in the Social Security Act). 42 U.S.C. §423(c)(1); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). There appears to be a disagreement about whether the date Sylvia

3

was last insured is March 31, 1999 (as the Social Security Administration says) or December 31, 1999 (as Sylvia contended), but in either event it was roughly a decade prior to her application for benefits, which she filed in 2009.  Having waited ten years past the termination of her covered status before seeking benefits, Sylvia faced the difficulty of mustering sufficient medical evidence and other persuasive proof to support the necessary finding that she was disabled a decade before.

Sylvia attempted to mount this hurdle by consulting Dr. Beiser, the cardiologist who had treated her during the relevant period from 1995 to 1999, and obtaining his opinion that she had been disabled during the time in question.   Ruhwiedel challenges the ALJ's analysis of Dr. Beiser's opinion, contending that it did not comply with applicable regulatory requirements and provided an inadequate explanation of the basis for rejecting the opinion.  An ALJ must give a treating physician's opinion controlling weight where the opinion is well supported by medical findings and is consistent with substantial evidence in the record.  *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010);  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Hofslien v. Barnhart*, 429 F.3d 375, 376 (7th Cir. 2006).

Dr. Beiser was Sylvia's treating cardiologist from her heart attack in 1995 until he moved out of state, apparently some time after the lapse of Sylvia's insured status.  Sylvia visited Dr. Beiser in his Appleton, Wisconsin office in December 2009 for a consultation concerning her application for disability benefits.  Dr. Beiser generated a three-page narrative report at that time in which he reviews Sylvia's medical history and expresses the opinion that:

> Mrs Ruhwiedel has been completely disabled and unable to perform any
> meaningful work since her initial myocardial infarction in 1995 due to a
> combination of ischemic cardiomyopathy, moderately severe aortic and mitral
> valve regurgitation documented on serial Doppler echocardiograms in 1995,

>1997, and 1998, as well as to her marked restrictive lung disease associated with her scoliosis. She, of course, continues to be completely disabled at the present time and unable to perform any type of meaningful work for which she has been trained with college degrees in human resources. Based upon these facts, this patient is entitled to Social Security disability payments.

[DE 11, p.347.][2]

"An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson*, 615 F.3d at 749, citing 20 C.F.R. §404.1527(d)(2). An ALJ cannot disregard medical evidence and substitute his own unqualified opinion. *Larson*, 615 F.3d at 749; *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

The ALJ's decision has this to say about Dr. Beiser's opinion:

>Dr. Beiser opined that the claimant is disabled and should qualify for Social Security benefits. There is no documentation to support his conclusion. The stress test done in December 1995 shows she could tolerate some exercise without complaints. Additionally, statements that a claimant is 'disabled', 'unable to work', can or cannot perform a past job, meets a Listing, or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability (20 CFR §404.1527(e)(2)).

[DE 11, p.23.] The ALJ is largely dismissive of Dr. Beiser's opinion because much of it is stated in terms of what he regards as quasi-legal conclusions. But the Seventh Circuit has been critical of such an approach, observing that the regulations do not support ignoring opinions of this kind, but instead merely give the final responsibility for disability determination to the Commissioner. *Bjornson*, 671 F.3d at 647-48.

---

[2] Dr. Beiser's report is in the administration record a second time, at pages 449-451.

The Commissioner's brief response on this issue is to echo the ALJ's assertion that there is "no documentation" to support Dr. Beiser's conclusion, and to argue that Dr. Beiser's opinion was rendered 10 years after the relevant time period and "without the support of any time-relevant treatment notes, clinical examination findings, or diagnostic test results." [DE 17, pp.7-8.] This is inaccurate, as the administrative record contains reports of the three echocardiograms to which Dr. Beiser refers [DE 11, pp. 499-500, 501, 503], as well as some additional stress tests and echocardiograms from the insured period [DE 11, pp.502, 505, 507].

The ALJ's own brief nod to the record focuses on only one of the three tests Dr. Beiser cites, the December 1995 stress test which reflects that Sylvia remained "asymptomatic without any episodes of chest pains or shortness of breath" even with a moderately intensive workload [DE 11, p.503].  But the other two tests Dr. Beiser refers to, echocardiograms occurring later in the relevant period, reflect the moderately severe regurgitation resulting from Sylvia's heart damage and refer to her experiencing "recent increasing shortness of breath and fatiguability with a murmur of mitral regurgitation." [DE 11, pp. 501, 499-500].  The administrative record overall well supports the medical facts reviewed by Dr. Beiser concerning Sylvia's scoliosis, her 1995 heart attack and subsequent history of cardiomyopathy.

The ALJ's dismissive and inaccurate comments do not satisfy the "good reasons" standard for his rejection of Dr. Beiser's opinions concerning Sylvia's ability to work.  Even where the ALJ articulates good reasons for rejecting a treater physician's opinion, he must determine what weight if any the opinion is due, considering various factors identified in the regulations.  *Larson*, 615 F.3d at 751; *Campbell*, 627 F.3d at 308.  The ALJ failed to do this as well, appearing to dismiss Dr. Beiser's view entirely without further discussion.  The ALJ's

failure to adequately articulate sound reasons for rejecting the treating physician's opinion requires remand of this case for further consideration by the Social Security Administration. *Mueller v. Astrue*, 2012 WL 3575274, *4 (Aug. 21, 2012); *Harlin v. Astrue*, 424 Fed.Appx. 564, *1 (June 13, 2011).

I remand somewhat reluctantly, as a number of reasons for discounting Dr. Beiser's opinion can be found in the administrative record. But on judicial review, neither the Commissioner nor the court can salvage an ALJ's opinion by supporting it with reasons that the ALJ did not articulate. *Campbell v. Astrue,* 627 F.3d 299 (7th Cir. 2010)*; Larson*, 615 F.3d at 749; *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Surprisingly, the Commissioner has not invoked harmless error but perhaps it's because the Seventh Circuit has looked askance at a "broad conception of harmless error" in the social security context. *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013); *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011). Nevertheless, on remand, the Commissioner might consider whether Beiser's opinion that Sylvia was entirely disabled between 1995 and 1999 is inconsistent with other substantial evidence in the record. For example, as the ALJ remarked, the December 15, 1995 stress test was essentially negative with no exercise-provoked chest pain, and the report found that Sylvia "remains asymptomatic" since June of 1995 [DE 11, p.503]. A previous stress test on June 15, 1995 had also found no chest pain provoked by exercise and reported fairly good exercise capacity [DE 11, p.507]. Echocardiograms later in the relevant period report Sylvia's heart condition unchanged as of November 1996, December 1997 and December 1998 [DE 11, pp. 502, 501, 499].

What's more, Dr. Beiser's report on a cardiology consultation on September 25, 2002 seems inconsistent with his later willingness to assess Sylvia as disabled dating back to her heart

attack in 1995. The September 2002 report refers to Sylvia's January 1995 angioplasty and states that "[a]n excellent result was obtained," and that Sylvia "actually did well and has remained quite stable until recently where she has shown evidence of progressive and now moderately severe cardiomyopathy." [DE 11, p.521]. Used in September 2002, Dr. Beiser's "until recently" language would seem likely to suggest that from 1995 through 1999 Sylvia was still "well," "stable" and enjoying the "excellent result" of the 1995 angioplasty.

After Sylvia visited the Cleveland Clinic prior to her surgery there in 2004, a Dr. William Stewart issued a letter/report that contained descriptions of Sylvia's cardiac history, indicating that following her January 1995 heart attack and angioplasty, she "recovered and did very well with no subsequent similar pains," that she was "found to have some leaky valve problems, not felt to be severe, and had yearly echo[cardiogram]s." [DE 11, p.246]. Dr. Stewart's report goes on to describe the symptoms in summer 2002 that led Sylvia to further medical attention for her heart. This description is of shortness of breath "on exertion with housework, 1 flight of stairs, walking 150-200 ft on level ground, lifting – especially in humid or very cold weather," but with "no associated chest pain, pressure, palpitations, nausea, vomiting, diaphoresis [*i.e.*, sweating], dizziness or loss of consciousness." *Id*. Although surgery was recommended at that time, Sylvia reportedly refused and "opted for medical management." *Id*. This report appears to cast some doubt on the credibility of Sylvia's testimony that she was disabled by shortness of breath, limited mobility and palpitations as far back as 1999 and even earlier.

In the Medical and Job Worksheet submitted with her disability claim in September 2009, Sylvia noted that she "made a good recovery from the heart attack" and that with regular cardiac evaluations "valve leakage did not become an issue for concern until about 2001." [DE

8

11, p.105]. As of September 20, 2005, the report of Sylvia's treating cardiologist, Dr. Gary Brigham, indicated that following a "complicated course" after her bypass surgery in 2004, Sylvia was "currently able to ambulate well on her own without assistance." [DE 11, p.443]. Sylvia herself repeatedly dated her current state of disability to the aftermath of her 2004 heart surgery and other more recent conditions. [DE 11, pp. 104, 105, 108, 111].

The administrative record also contains several indications that, although perhaps not on someone else's payroll, Sylvia was capable of, and engaged in, gainful work during the period she claimed to have been disabled. Sylvia reported that at the time of the January 1995 heart attack, she was "not working out of the home." [DE 11, p.105]. She made no attempt to re-join the work force between her claimed onset of disability in January 1995 through her last date of insured status in 1999, testifying that she "was disabled" and "was not able to seek employment." [DE 11, p.38]. At the hearing, she told the ALJ that she had not done any work since the fourth quarter of 1993 because she was (and remained) unable to work due to her medical condition. [DE 11, p.37]. But the record contains notations in reports by both of her cardiologists (Dr. Beiser's dated Sept. 2002 and Dr. Brigham's in Sept. 2005) with references to Sylvia operating a restaurant and a dog kennel. [DE 11, pp. 521, 444.][3] One of these is from Dr.

---

[3] Sylvia's obituary in the Northwest Indiana *Times* newspaper reports that she was the co-owner of Westwind Kennels in Crown Point, Indiana. *See* http://www.legacy.com/obituaries/nwitimes/-obituary.aspx?pid=158483556 (accessed 1/31/2013). The website of Westwind Kennels contains an "About Us" page with the following information on Sylvia and Henry Ruhwiedel:

> Sylvia and Henry Ruhwiedel are a team of Dog Behavior Consultants that have outstanding training coupled with extensive experience in hands-on training in Northwest Indiana.
>
> Sylvia has two Masters degrees in Human Resources and Human Development and holds multiple diplomas from Penn Foster College including: Dog Behavior and Training, Veterinary Technician. In addition, Ms. Ruhwiedel holds two

Beiser himself, despite his later opining that Sylvia had been unable to perform any meaningful work since 1995.

All these matters are within the administrative record for the Commissioner's review on remand, and can be considered (and cited) as appropriate in connection with a new determination about the weight to give Dr. Beiser's opinions concerning whether Sylvia was disabled in the pertinent time frame. Because remand is necessary on the ALJ's analysis of the treating cardiologist's opinion, I need not address Ruhwiedel's other arguments. *Eskew v. Astrue*, 462 Fed.Appx. 613, 615 (7th Cir. 2011) (given the court's remand on one of claimant's arguments, it "need not address [her] remaining arguments"); *Fike v. Astrue*, 2012 WL 1200670, at *10, n.6 (N.D. Ind. 2012). In reevaluating Sylvia's application, the ALJ should in turn also revisit his determinations as to Sylvia's credibility and her RFC as appropriate and necessary. Some of my observations above may be relevant to those matters as well.

I note that before me the Commissioner concedes one shortcoming in the administrative proceedings, namely that the ALJ did not give Ruhwiedel notice of all the information concerning the availability of counsel required by the 7th Circuit's decision in *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). [DE 17, p.5]. *See also Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). Remand is not automatic as a result of this deficiency, but is required

---

diplomas in Pet Grooming.

Henry Ruhwiedel, BS, B/M, CPBE, APDT, and Sylvia have over Seventeen years of practical experience in training client dogs at Westwind Kennels. Sylvia has also done in-home training for several years in Illinois as well as working as a veterinary technician. Sylvia and Henry have written and taught a class in small animal care at Indiana University for several years.

*See* http://dogkennel.org/ (accessed 2/13/13).

only if the ALJ did not develop a full and fair record.  *See Ratulowski v. Astrue,* 380 Fed.Appx. 552, 554 (7th Cir.2010), citing *Skinner v. Astrue,* 478 F.3d at 841–42 (7th Cir. 2007); *Binion,* 13 F.3d at 245–46.  In light of the other basis for remand, I don't address Ruhwiedel's contentions about ways in which the ALJ failed to develop a full and fair record, other than to note that the record made at the hearing on the requirements of Sylvia's past relevant work as a human resources manager could rightly be called "skimpy."[4]  As needed, the Commissioner will have an opportunity to beef up the record in that area, as well as to consider the credibility of Sylvia's testimony that she was unaware of the existence of social security disability benefits, despite having master's degrees in Human Resources and Human Resources Management, and having worked for more than 20 years as a human resources manager. [DE 11, pp.54-55, 152].

## Conclusion

Pursuant to sentence four of 42 U.S.C. §405(g), this case is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion.  The Clerk shall enter judgment to that effect in favor of plaintiff Henry Ruhwiedel.

**SO ORDERED**.

ENTERED: March 11, 2013

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] The ALJ did not inquire of Sylvia about the demands of her past relevant work, and from the Vocational Expert merely obtained the testimony that such work is classified as skilled and sedentary. [DE 11, p.59]. The ALJ may determine (and explain) that the documentary record provided all the necessary information on the job's demands.